# HANLEY *v.* KANSAS CITY SOUTHERN RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 131.   Argued December 18, 1902.—Decided January 5, 1903.

The transportation of goods on a through bill of lading from Fort Smith, Arkansas, to Grannis, Kansas, over respondent's railroad by way of Spiro in the Indian Territory, a total distance of one hundred and sixteen miles, of which fifty-two miles is in Arkansas and sixty-four in the Indian Territory, is interstate commerce, and is under the regulation of Congress, free from interference by the State of Arkansas; a railway company operating such a line can maintain an action for equitable relief restraining the state railroad commissioners from fixing and enforc-

ing rates between points within the State, when the transportation is partly without the State and under the conditions above stated.

*Lehigh Valley Railroad Co.* v. *Pennsylvania,* 145 U. S. 192, distinguished as applying to *taxation* on freight received on merchandise transported from one point to another within the same State by a route partly through another State and not to the *regulation* of such transportation.

THE case is stated in the opinion of the court.

*Mr. Charles E. Warner* for appellants. *Messrs. Winchester & Martin* were on the brief.

*Mr. Gardner Lathrop* for appellee. *Mr. Max Pam, Mr. Thomas R. Morrow* and *Mr. James B. Read* were with him on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought in the Circuit Court by a railway company incorporated under the laws of Missouri, against the railroad commissioners of Arkansas, seeking an injunction against their fixing and enforcing certain rates, as we shall explain. The bill was demurred to for want of equity, the demurrer was overruled, and a decree was entered for the plaintiff. The defendants bring the case here by appeal. 106 Fed. Rep. 353.

The plaintiff owns a road running through several States and Territories. The road after leaving Missouri runs for twenty-eight miles and a fraction through Arkansas to the dividing line between that State and the Indian Territory, then nearly one hundred and twenty-eight miles in the Territory, and then over one hundred and seventeen miles in Arkansas again to Texas. There is also a branch line running from Fort Smith, in Arkansas, to Spiro, in the Indian Territory, about a mile of which is in the State and fifteen in the Territory, and there are other branches. Goods were shipped from Fort Smith by way of Spiro and the road in the Indian Territory to Grannis, in Arkansas, on a through bill of lading, the total distance being a little more than fifty-two miles in Arkansas and nearly sixty-four in the Indian Territory. For this the railroad company charged a sum in excess of the rate fixed by the railroad com-

missioners, and was summoned before them under the state law. The commissioners decided that the company was liable to a penalty under the state statute, assert their right to fix rates for continuous transportation between two points in Arkansas, even when a large part of the route is outside the State through the Indian Territory or Texas, and intend to enforce compliance with these rates. The only question argued and the only one that we shall discuss is whether the action of the commissioners is within the power of a State, or whether it is bad as interfering with the power of Congress to regulate commerce among the several States and with the Indian tribes. *Smyth* v. *Ames*, 169 U. S. 466, 517.

It may be assumed that this power of Congress over commerce between Arkansas and the Indian Territory is not less than its power over commerce among the States, *Stoutenburgh* v. *Hennick*, 129 U. S. 141; and the distinction hardly is important, since the appellants are asserting similar authority where the loop beyond the state boundary runs through Texas. We may as well add, in this connection, that the present railroad gets the authority for its line in the Indian Territory, through a predecessor in title, from an act of Congress of 1893, c. 169, 27 Stat. 487, and that, by that act, Congress " reserves the right to regulate the charges for freight and passengers on said railroad . . . until a state government shall be authorized to fix and regulate the cost," etc.; " but Congress expressly reserves the right to fix and regulate at all times the cost of such transportation by said railroad or said company whenever such transportation shall extend from one State into another, or shall extend into more than one State."

It may be assumed further, as implied by the language just quoted, that the transportation in the present case was commerce. See also the act of February 4, 1887, c. 104, § 1, 24 Stat. 379; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 203, and *Wabash, St. Louis & Pacific Railway Co.* v. *Illinois*, 118 U. S. 557. Transportation for others, as an independent business, is commerce, irrespective of the purpose to sell or retain the goods which the owner may entertain with regard to them after they shall have been delivered.

The transportation of these goods certainly went outside of Arkansas, and we are of opinion that in its aspect of commerce it was not confined within the State. Suppose that the Indian Territory were a State and should try to regulate such traffic, what would stop it? Certainly not the fiction that the commerce was confined to Arkansas. If it could not interfere the only reason would be that this was commerce among the States. But if this commerce would have that character as against the State supposed to have been formed out of the Indian Territory, it would have it equally as against the State of Arkansas. If one could not regulate it the other could not.

No one contends that the regulation could be split up according to the jurisdiction of State or Territory over the track, or that both State and Territory may regulate the whole rate. There can be but one rate, fixed by one authority, whether that authority be Arkansas or Congress. *Wabash, St. Louis & Pacific Railway Co.* v. *Illinois,* 118 U. S. 557; *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204; *Hall* v. *De Cuir,* 95 U. S. 485. But it would be more logical to allow a division according to the jurisdiction over the track than to declare that the subject for regulation is indivisible, yet that the indivisibility does not depend upon the commerce being under the authority of Congress, but upon a fiction which attributes it wholly to Arkansas, although that fiction is quite beyond the power of Arkansas to enforce.

It is decided that navigation on the high seas between ports of the same State is subject to regulation by Congress, *Lord* v. *Steamship Co.,* 102 U. S. 541, and is not subject to regulation by the State, *Pacific Coast Steamship Co.* v. *Railroad Commissioners,* 9 Sawyer, 253, and although it is argued that these decisions are not conclusive, the reason given by Mr. Justice Field for his decision in the last cited case disposes equally of the case at bar. "To bring the transportation within the control of the State, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the State." 9 Sawyer, 258. Decisions in point are *State* v. *Chicago, St. Paul, Minneapolis & Omaha Railway Co.,* 40 Minnesota, 267; *Sternberger* v. *Cape Fear &*

*Yadkin Valley Railroad Co.*, 29 So. Car. 510. See also *Milk Producers' Protective Association* v. *Delaware, Lackawanna & Western Railroad Co.*, 7 Interstate Commerce Rep. 92, 160, 161.

There are some later state decisions contrary to those last cited. *Campbell* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 86 Iowa, 587; *Seawell* v. *Kansas City, Ft. Scott & Memphis Railroad Co.*, 119 Missouri, 222; *Railroad Commissioners* v. *Western Union Telegraph Co.*, 113 No. Car. 213. But these decisions were made simply out of deference to conclusions drawn from *Lehigh Valley Railroad Co.* v. *Pennsylvania*, 145 U. S. 192, and we are of opinion that they carry their conclusions too far. That was the case of a tax and was distinguished expressly from an attempt by a State directly to regulate the transportation while outside its borders. 145 U. S. 204. And although it was intimated that, for the purposes before the court, to some extent commerce by transportation might have its character fixed by the relation between the two ends of the transit, the intimation was carefully confined to those purposes. Moreover, the tax " was determined in respect of receipts for the proportion of the transportation within the State." 145 U. S. 201. Such a proportioned tax had been sustained in the case of commerce admitted to be interstate. *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217. Whereas it is decided, as we have said, that when a rate is established, it must be established as a whole.

We are of opinion that the language which we have quoted from Mr. Justice Field is correct, and that the decree of the Circuit Court should be affirmed.

*Decree affirmed.*