No. 21,876.

C. KLIPPEL, *Appellee*, v. THE WESTERN UNION TELEGRAPH COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

TELEGRAM—*Delay in Transmission—Interstate Commerce—Measure of Damages.* In an action to recover damages alleged to have been caused by delay in delivering an unrepeated message, sent from Greensburg, Kan., to Hutchinson, Kan., it was shown that defendant sent the telegram over a line running from Greensburg through the Hutchinson office to Kansas City, Mo., where it was relayed to Hutchinson. The delay in delivering the message was not occasioned by the manner in which it was routed. The practice of relaying such messages through Kansas City had obtained for years, because Kansas City controls the circuit and maintains the necessary force for proper and prompt handling of such telegrams. The jury found that the message was transmitted in the regular, usual and customary routing employed by the defendant in transmitting messages between the place of origin and destination. *Held,* that the transmission of the message was an interstate transaction, and that a rule of the defendant limiting its liability on account of its negligence in the delivery of an interstate message to the amount received for sending the same, is valid and binding. (*Bailey v. Telegraph Co.,* 97 Kan. 619, 156 Pac. 716; rehearing denied, 99 Kan. 7, 160 Pac. 985; *Kirsch v. Telegraph Co.,* 100 Kan. 250, 164 Pac. 267; *Postal Telegraph-Cable Co., v. Warren-Godwin Lumber Co.,* [U. S.], decided December 8, 1919.)

Appeal from Reno district court, FRANK F. PRIGG, judge. Opinion filed January 10, 1920. Reversed.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston,* all of Wichita, and *Francis Raymond Stark,* of New York, N. Y., for the appellant.

*J. S. Simmons,* and *Stuart Simmons,* both of Hutchinson, for the appellee.

Klippel v. Telegraph Co.

The opinion of the court was delivered by

PORTER, J.: The plaintiff brought suit against the telegraph company to recover for the loss of a doctor's fee which he alleged was occasioned by delay in delivering a message sent to him by another physician. It was an unrepeated message, reading as follows:

"GREENSBURG, KAS., 5:30 P. M., OCT. 30, 1916.
"Dr. C. Klipple, Hutchinson, Kas.
"Have ambulance meet No. 34. Have patient for hospital.
"DR. R. H. MILLER."

The message was received at Hutchinson twenty minutes after it was filed at Greensburg. Six minutes after it was received it was taken by a messenger to plaintiff's office, during plaintiff's office hours, but the office was closed, and the message was not delivered until next morning at 8:05. Plaintiff claims that if the message had been immediately delivered at his home in Hutchinson, his wife would have telephoned to where he was hunting or shooting in the country, 35 miles from Hutchinson, in time for him to return to Hutchinson by automobile that evening, meet the train and get the patient, and that, as he testified, he would have charged a doctor's fee "from $1,500 to $2,000, or upwards," if he had had the chance. The jury returned a verdict in his favor for $900. Judgment was rendered upon the verdict, and the defendant appeals.

The answer alleged that the receipt, transmission and delivery of the message was a part of interstate commerce, and was governed by the act of congress of June 18, 1910 (Part 1, 36 U. S. Stat. at Large, ch. 309, pp. 539-544), and that by the defendant's rule as printed upon the back of the message, its liability was limited in case of an unrepeated message to the charges for sending. After filing its answer, defendant served on plaintiff an offer to confess judgment for an amount in excess of the cost of transmitting the message, which offer the plaintiff rejected.

The principal question involved is whether the message was interstate commerce. The distance from Greensburg to Hutchinson is approximately 85 miles. The defendant has a telegraph line running from Greensburg to Kansas City, Mo., through the Hutchinson office; and this message, in going

from Greensburg to Kansas City, passed through the Hutchinson office and was relayed back from Kansas City. The evidence showed that the company had no instrument on the Greensburg line at Hutchinson, and that there was no place about that office at which a message could be taken, without putting an instrument on this wire. The practice of relaying such messages to Kansas City, Mo., had obtained for years because Kansas City controls the circuit and maintains a necessary force for proper and prompt handling of telegrams in cases of that kind. An employee of the company testified:

"We had no man and have no man at Hutchinson sitting on the Greensburg wire; Kansas City has a man sitting on the Greensburg wire all the time, and we have a man here at Hutchinson sitting on the Kansas City wire all the time."

There is no contention that the delay in the delivery of the message was caused by relaying it through the Kansas City office to Hutchinson. In fact, the message was received at Hutchinson within twenty minutes after it was filed at Greensburg, and six minutes afterwards was taken by a messenger to the plaintiff's office. The delay was in the failure of the company to deliver the message at plaintiff's residence. The jury made a finding to the effect that the message was transmitted in the regular, usual and customary routing employed by the defendant in transmitting messages from Greensburg to Hutchinson.

That the defendant, if the message was interstate commerce, is entitled to the protection afforded it by the stipulation in question, is settled by the authorities. (*Bailey v. Telegraph Co.*, 97 Kan. 619, 621, 156 Pac. 716; rehearing denied, 99 Kan. 7, 160 Pac. 985; *Kirsch v. Telegraph Co.*, 100 Kan. 250, 164 Pac. 267; *Gardner v. Western Union Telegraph Co.*, 231 Fed. 405, Writ of Cert. denied, 243 U. S. 644; *West. Un. Tel. Co. v. Brown*, 234 U. S. 542.)

Was the message interstate in character by reason of the method by which it was transmitted?

The case of *Leibengood v. Railway Co.*, 83 Kan. 25, 109 Pac. 988, involved a shipment that originated in Kansas, passed out of Kansas for a short distance into Missouri, then back to its destination in Kansas. It was held that the shipment was interstate commerce. It was said in the opinion:

Klippel v. Telegraph Co.

"The route of carriage was out of the state a very short distance, it is true, but, as we have seen, the shipment is to be treated as a unit, and the rule in such a case would appear to be the same whether the act of transportation was outside of the state one or a hundred miles." (p. 28.)

The decision was expressly rested upon the ruling in the case of *Hanley v. Kansas City Southern Ry. Co.,* 187 U. S. 617, which arose over a shipment of goods on a through bill of lading, from a point in Arkansas to another point in the same state, over a road which passed a short distance through Indian Territory, and where the supreme court of the United States held the shipment to be interstate. The Leibengood case was decided in 1910, and followed, as we have seen, the Hanley case. The supreme court of Oklahoma followed the Leibengood case, and applied the doctrine to a telegraph case on all fours with the one at bar. A message was sent from Apache, Okla., to Henrietta, Okla., and was relayed via Wichita, Kan. It was held to be interstate commerce. (*Western Union Telegraph Co. v. Kaufman,* [Okla.] 162 Pac. 708.)

The Hanley case was again followed and approved in *Kirby v. Railroad Co.,* 94 Kan. 485, 146 Pac. 1183, and has become the leading case upon the subject. In fact, in a number of decisions by state courts involving the precise question now before us, the Hanley case has been held to be controlling.

In *Western Union Telegraph Co. v. Lee,* 174 Ky. 210, it was held that a telegraph message sent from Lebanon, Ky., to Mayfield, Ky., but which was relayed through Nashville, Tenn., en route, was an interstate message. The opinion by the court of appeals contains an exhaustive review of the authorities. It gives to the Hanley case the credit of being the leading one upon the subject, and cites the Leibengood case, *supra,* and *Kirby v. Railroad Co.,* supra, in support of the controlling principle. In the opinion it is said:

"And, since a telegraph company carrying messages occupies the same relation to commerce as a carrier of goods (*W. U. Tel. Co. v. Texas,* 105 U. S. 460), it would seem to necessarily follow that the principle announced in the Hanley case must be applied here, since the passage of the act of 1910; and that the message sent by Lee constituted interstate commerce. It was so held under precisely similar states of fact in the cases of Kaufman, Bolling, and Mahone, above cited. Messages sent from one point within a state to another like point but passing through a portion of another state while in transit, have always been interstate telegrams.

But before Congress took control of the subject of interstate telegrams, state laws could incidentally affect them; since the act of 1910, they cannot."   (p. 224.)

The case of *Taylor v. Western Union Telegraph Co.*, (Mo.) 204 S. W. 818, arose on precisely similar facts.  The message was filed at Kansas City, Mo., to be sent to Triplett, Mo.  There was evidence showing that the usual, ordinary and customary way of routing messages between those points was through a relay station at Omaha, Neb.  The plaintiff's evidence showed there was a Western Union wire running from Kansas City to Brunswick, Mo., and one from Brunswick to Triplett, and that a message could have been sent that way.  The distance from Kansas City to Brunswick is about ninety miles, and from Brunswick to Triplett about seven miles, while it is two hundred miles from Triplett to Omaha, and more than two hundred miles from Kansas City to Omaha.  In the opinion the court said:

"Of course, the fact that the origin and destination of the message was in the state of Missouri did not make the message an intrastate one, when its course or route took it outside of the state," (citing *Hanley v. Kansas City Southern Ry. Co.*, supra; *Bateman v. Western Union Tel. Co.*, 174 N. C. 97; *Western Union Tel. Co. v. Kaufman*, [Okla.] 162 Pac. 708; *Western Union Tel. Co. v. Bolling*, 120 Va. 413; *Western Union Tel. Co. v. Lee*, 174 Ky. 210; *Davis v. Western Union Tel. Co.*, [Mo.] 202 S. W. 229).  (p. 818.)

Another case like the present one is *Berg v. Western Union Telegraph Co.*, (S. C.) 96 S. E. 248.  The message was received by the company at Charleston, S. C., for transmission to Ridgeland, S. C., and was sent to Savannah, Ga., where it was relayed and then transmitted to Ridgeland.  It was held to be an interstate message within the interstate commerce act of 1887, as amended by the act of 1910.

The Virginia supreme court of appeals had the same question before it in *Western U. Tel. Co. v. Bolling* (1917), 120 Va. 413.  It was held that the transmission of a telegram between two points within the state, over a line which passes out of the state and requires relaying the message outside of the state, is interstate commerce.  In the opinion, after citing authorities which it states "are without exception cases of transportation by common carriers," the opinion proceeds—

"Inasmuch, however, as under the express provisions of the act to

Klippel v. Telegraph Co.

regulate commerce, telegraph and telephone companies are common carriers, these decided cases are conclusive of the question here involved. Since the case of *Hanley v. Kansas City &c Ry. Co.* 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, there has been no dissent from the proposition that although the point of shipment and the point of delivery are within the same state, if during the course of transportation the property passes without the boundaries of the state, such a shipment is interstate commerce" (*citing many authorities*). (p. 415.)

In the Bolling case, *supra,* there appeared to be no means of transmitting the message except through a relay point outside the state, but in the companion case of *Western U. Tel. Co. v. Mahone,* 120 Va. 422, decided the same day, the message involved might have been sent to the point of destination without leaving the state, and the court held that there was no substantial difference between the two cases.

Since the case at bar reached this court, a case which arose upon a similar state of facts has been decided by the highest court of Virginia (*Western Union Telegraph Co. v. Bowles,* [Va.] 98 S. E. 645). Bowles deposited a message with the defendant at Bassett, N. C., to be transmitted to Martinsville, in the same state. The message was forwarded to a relay station at Richmond, Va., over a wire that passed through the destination, Martinsville, just as in the case at bar. The transmission of the message was held to be interstate.

In *Bateman v. Telegraph Co.,* decided by the North Carolina court in 1917 (174 N. C. 97), an action was brought to recover damages for mental anguish caused by delay in failing to properly transmit and deliver to plaintiff a death message. The telegraph company transmitted the message by way of Norfolk, Va., instead of directly to Plymouth, N. C., and on the trial contended that the sending of the message was a transaction in interstate commerce, and should be governed by the federal law which denies recovery for mental anguish. In the opinion it was said:

"We are of the opinion that it was, and especially so if, in sending the message via Norfolk, Va., the defendant did so in good faith, and not for the purpose merely of evading the law. On the face of the transaction, and without any suggestion and finding of a fraudulent purpose to circumvent the law and acquire the protection of the federal principle and to rid itself of the contrary rule of the state court, it is an interstate, and not an intrastate, transaction. The authorities to this effect are very numerous and consistent. *Shelby Ice and Fuel Co.*

*v. Ry. Co.*, 147 N. C., 66. In that case we followed *Hanley v. R. R.*, 187 U. S., 617, which finally determined the question in favor of the view, that although the two points are in the same state, yet if in the transportation by a carrier any part of the route is in another state, it is interstate commerce." (p. 98.)

The court quoted and adopted the rule stated by Justice Fields, on the circuit, in *Pacific Coast Steamship Co. v. Board of Railroad Comm'rs*, 9 Sawyer, 253 (18 Fed. 10, 13), as follows:

"To bring the transportation within the control of the state, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the state."

As in the case at bar, the jury in the North Carolina case made a finding, in substance, that the telegraph company acted in good faith in the routing of the message—that is, they found that the route selected by defendant was "the usual, customary and necessary one."

As suggested by the defendant, the method of transmission in this case was not isolated and exceptional. The jury have found that it was the regular, usual and customary practice; and since the message was, in fact, conveyed by means of interstate agencies, which are subject to the jurisdiction of the interstate commerce commission, it is clear that the commission could, if it saw fit, order the practice changed. Whether commerce is interstate or intrastate must be tested by the actual transaction, and not by the methods employed in transporting the property or in transmitting telegraph messages. (See *Kirmeyer v. Kansas*, 236 U. S. 568.)

It is pointed out in plaintiff's brief that in no case cited by the defendant has the supreme court of the United States upheld the validity of contracts limiting the liability of a telegraph company upon unrepeated messages. Since this case was submitted our attention has been directed to a decision of the supreme court of the United States, handed down this month, and which involved the extent of the liability of a telegraph company for delay in transmitting an unrepeated interstate message. (*Postal Telegraph-Cable Co. v. Warren-Godwin Lumber Co.*) The decision of the supreme court of Mississippi, holding that the transmission of an interstate message was not affected by the act of 1910, was reversed. In the opinion, which was delivered by Mr. Chief

Justice White, the court held that the act of 1910 was intended to place the control of telegraph companies under the interstate commerce commission, and that it subjected "such companies as to their interstate business to the rule of equality and uniformity of rates which it was manifestly the dominant purpose of the Act to Regulate Commerce to establish, a purpose which would be wholly destroyed if, as held by the court below, the validity of contracts made by telegraph companies as to their interstate commerce business continued to be subjected to the control of divergent and it may be conflicting local laws."

The opinion quotes with approval the decision of the interstate commerce commission in *Clay County Produce Company v. Western Union Telegraph Company*, 44 Int. Com. Rep. 670, which upheld the reasonableness of the provision limiting the extent of the liability of telegraph companies for mistakes and delays in unrepeated messages. The opinion then proceeds:

"But we need pursue the subject no further, since, if not technically authoritatively controlled, it is in reason persuasively settled by the decision of the Interstate Commerce Commission in dealing in the case above cited with the very question here under consideration as the result of the power conferred by the Act of Congress of 1910; by the careful opinion of the circuit court of appeals of the eighth circuit dealing with the same subject (*Gardner v. Western Union Telegraph Co.*, 231 Fed. 405) ; and by the numerous and conclusive opinions of state courts of last resort which in considering the Act of 1910 from various points of view reached the conclusion that that act was an exertion by Congress of its authority to bring under federal control the interstate business of telegraph companies and therefore was an occupation of the field by Congress which excluded state action."

Among the decisions by state courts cited with approval are *Bailey v. Telegraph Co.*, 97 Kan. 619, 156 Pac. 716, and two others from which we have quoted at some length, *Bateman v. Telegraph Co.*, supra., and *Western Union Telegraph Co. v. Lee*, supra, involving messages relayed as in the present case. It may be said that the opinion merely approves the conclusion reached in the Bateman and Lee cases, to the effect that congress has occupied the field and thereby excluded state action, and that it does not go to the extent of approving the doctrine that messages transmitted as the one in the case at bar are interstate. However that may be, the conclu-

sion reached by the majority of the court is, that since the act of congress of 1910, the principle applied in *Hanley v. Kansas City Southern Ry. Co.*, 187 U. S. 617, followed and approved in the Leibengood and Kirby cases, *supra*, applies to the transmission of telegraphic messages, and that, at least in a case where it is established that in the regular, usual and customary practice the message was relayed as in the case at bar, its tranmission becomes interstate. The defenses set up in the answer are, therefore, available to the defendant. (*Bailey v. Telegraph Co.*, 97 Kan. 619, 156 Pac. 716; *Kirsch v. Telegraph Co.*, 100 Kan. 250, 164 Pac. 267.)

The judgment is reversed, and the cause is remanded with directions to enter judgment for the defendant.

JOHNSTON, C. J., dissents.