## IRONITE CO. et al. v. GUARANTEE WATERPROOFING CO. et al.
### No. 9495.

Circuit Court of Appeals, Eighth Circuit.
March 30, 1933.

· VAN VALKENBURGH, Circuit Judge, dissenting in part.

---

Joshua R. H. Potts, of Chicago, Ill. (Eugene Vincent Clarke and Basel H. Brune,

both of Chicago, Ill., and Thorpe & Thorpe, of Kansas City, Mo., on the brief), for appellants.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

This is a trade-mark and unfair competition action. The plaintiffs prayed an injunction, an accounting for gains and profits, and damages. At the conclusion of the evidence, the court entered a decree dismissing the bill for want of jurisdiction.

The opinion of the court sets forth the reasons for the decree. The court determined that the action for trade-mark infringement must be based upon section 96, title 15, US CA; that this section required three essentials to an actionable infringement of a registered trade-mark, which were (1) a reproduction or imitation of the trade-mark, (2) the affixing of such reproduction or imitation either to merchandise or to labels or receptacles used in connection with merchandise covered by the registration, and (3) the use of such reproduction or imitation in interstate commerce; that defendant had not so affixed, and had not used the reproduction in interstate commerce in connection with the sale of merchandise of the same description as covered by that of the registered trade-mark; that therefore no actionable infringement was shown under section 96.

As to unfair competition, the court found the defendants guilty thereof. Also, the court found there was lack of complete diversity of citizenship. In this situation, the court determined there was no jurisdiction, under Stark v. Stark Brothers Nurseries & Orchards Co., 257 F. 9, this court, and Taylor v. Bostick, 299 F. 232 (C. C. A. 3).

We are considerably hampered in consideration of this case by the fact that no brief or oral argument is here on the part of appellees. This situation necessitates our independent investigation of the propriety of the order of dismissal. Appellants present here several matters, some of which apply to jurisdiction, and others to the merits. As the trial court has made no determination upon the merits, that matter is not properly before us, and we are confined to an examination of the jurisdiction of the trial court.

The decisive point in this case is whether this action must be based upon section 96, title 15, USCA, or whether it may be based upon section 99 of the same title. If it must be regarded as based on section 96, the determination of the trial court was correct, for

the reasons following: That section clearly requires, as the court held, the concurrence of three essentials before an infringement could be maintained thereunder, and those three are as stated by the court. The appellants have argued the case here as though the trial court had found but one of those three essentials lacking, to wit, use in interstate commerce of the objectionable trade-mark. However, the court not only found that essential missing, but it also found missing another essential, which is that the defendant should have affixed the objectionable trade-mark to the package used in interstate commerce. The evidence seems clear that this finding is amply supported by the evidence, if indeed it is not conclusively shown therein. Therefore, in so far as section 96 is concerned, it would be of no avail to appellants to convince us that the use was in interstate commerce. Hence, if this action must be regarded as brought under section 96, there has been a complete failure of proof as to affixing the trade-mark, and therefore the court necessarily reached the conclusion that no recovery could be had for infringement of the trade-mark under that section. As there was a lack of necessary diversity of citizenship, the jurisdiction of the court would have to rest upon infringement of trade-mark, and a failure to establish a cause of action thereon might result in a lack of jurisdiction as to the issue of unfair competition, under the Stark Case.

However, this action not only may be regarded as brought under section 99, but it must be so treated. These two sections, as well as others, are part of the Trade-Mark Act of 1905. Sections 96, 99, 100, and 103 cover the provisions as to remedies. Section 96 is a pure action at law for damages for infringement of a trade-mark registered under the act. Not only does it fail to permit, but its very terms actually prohibit, any thought of equitable relief or remedy, since it is expressly a provision for the recovery of actual damages by a jury (with provision for trebling such in the discretion of the court). Also, it may be noted that section 99 emphasizes, expressly, that section 96 is intended to cover only "actions of law." Section 99 provides the equitable remedy for infringement of trade-marks registered under the act. In addition to injunctive relief, this section provides for recovery of profits and of damages. Section 100 deals only with the power of the court to order the destruction of infringing matter in the possession of the defendant, where the plaintiff has prevailed, either under sections 96 or 99. Section 103 declares that the above remedies are cumulative, and not exclusive of any remedy at law or in equity which existed for the protection of trade-marks. In short, it declares that there is no diminution of the remedies at common law to protect common-law trade-marks.

■ This petition is very clearly an equitable action. In three separate places in the body of the petition this is made clear, and the prayer begins with a statement that, "Inasmuch as plaintiffs have no plain, adequate and complete remedy except in this Court of Equity, therefore plaintiffs pray." The relief asked in the prayer is for an injunction, an accounting for gains and profits, damages (with increase), and delivery up, to be destroyed, of the offending matter. All of this relief is incorporated and provided for in section 99, except the destruction of the offending matter, which is covered by section 100. Thus it is clear that this case was not and could not have been brought under section 96; is not governed by the provisions or requirements of that section; and that the court erred in so holding. It is also clear that it is brought, primarily, under section 99, though a portion of the relief asked is provided in section 100.

The question remains whether a case was established under section 99. The court found that the matter covered by the trade-mark was subject to registration as such, and that it was being used by the defendant without right. He found, also, that the defendant was not using it in connection with sales in interstate commerce. Therefore, our problem, viewing alone the findings of the court, has to do with whether it was necessary to show a use by defendant of the trade-mark in interstate commerce, and whether that was shown. Passing from the finding of the court to the evidence, there is no dispute therein as to what the defendant was doing in relation to interstate commerce. He was taking contracts for applying this Ironite waterproofing mixture to concrete walls. In these contracts, he was obligated to do the work and to use Ironite mixture. To get this Ironite mixture to the place of use, he shipped it from the place where he had received it to the place of use, in interstate commerce.

■ The findings of the court strongly intimate, if they do not so express the idea, that it was necessary to show a sale where delivery took place in interstate commerce. Sale is not controlling, and we need not determine whether what the defendant did constituted a sale with a delivery by interstate commerce. Federal control over trade-marks does not

rest upon the patent and copyright provision (article 1, § 8, cl. 8) in the Constitution (Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550), but that power is found in the commerce clause (article 1, § 8, cl. 3), as is shown by many cases, of which a late one is Macaulay v. Malt-Diastase Co., 55 App. D. C. 277, 4 F.(2d) 944. The power of Congress over interstate commerce is not limited to transportation in connection with sales, but extends to the bare act of transportation in interstate commerce. In the noted case of Gibbons v. Ogden, 9 Wheat. 1, 189, 6 L. Ed. 23, Chief Justice Marshall said: "The words are, 'congress shall have power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.' The subject to be regulated is commerce; and our constitution being, as was aptly said at the bar, one of enumeration, and not of definition, to ascertain the extent of the power, it becomes necessary to settle the meaning of the word. The counsel for the appellee would limit it to traffic, to buying and selling, or the interchange of commodities, and do not admit that it comprehends navigation. This would restrict a general term, applicable to many objects, to one of its significations. Commerce, undoubtedly, is traffic, but it is something more—it is intercourse. It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse. The mind can scarcely conceive a system for regulating commerce between nations, which shall exclude all laws concerning navigation, which shall be silent on the admission of the vessels of the one nation into the ports of the other, and be confined to prescribing rules for the conduct of individuals, in the actual employment of buying and selling, or of barter. If commerce does not include navigation, the government of the Union has no direct power over that subject, and can make no law prescribing what shall constitute American vessels, or requiring that they shall be navigated by American seamen. Yet this power has been exercised from the commencement of the government, has been exercised with the consent of all, and has been understood by all to be a commercial regulation. All America understands, and has uniformly understood, the word 'commerce,' to comprehend navigation. It was so understood, and must have been so understood, when the constitution was framed. The power over commerce, including navigation, was one of the primary objects for which the people of America adopted their government, and must have

been contemplated in forming it. The convention must have used the word in that sense, because all have understood it in that sense; and the attempt to restrict it comes too late."

In Hanley v. Kansas City S. Ry. Co., 187 U. S. 617, 619, 23 S. Ct. 214, 215, 47 L. Ed. 333, the court said: "Transportation for others, as an independent business, is commerce, irrespective of the purpose to sell or retain the goods which the owner may entertain with regard to them after they shall have been delivered."

In Second Employers' Liability Cases, 223 U. S. 1, 46, 32 S. Ct. 169, 173, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, the court said: "The term 'commerce' comprehends more than the mere exchange of goods. It embraces commercial intercourse in all its branches, including transportation of passengers and property by common carriers, whether carried on by water or by land."

Numerous acts of Congress dealing solely with transportation have been upheld. Examples are the "White Slave" Act (18 USCA § 397 et seq.), the "Dyer" Act (18 USCA § 408), the "Pure Food" Acts (21 USCA § 1 et seq.), the "Safety Appliance" Acts (45 USCA § 1 et seq.), and many others.

The extent and the manner in which Congress intended to employ this power in the Trade-Mark Act depend upon the provisions of that act. This meaning is easily discoverable from the expressions in various sections thereof. The section providing for registration employs the word "used" in commerce (section 81, title 15, USCA). The same term is employed in sections 82, 85, and, significantly, in section 96. There is no warrant to limit this broad term "use" to use in connection with a sale. It is more in harmony with the meaning of the term (unrestricted in the act) and with the purpose of the act to construe it as equivalent to transportation. If this construction be correct, there can be no doubt that the undisputed evidence here shows such "use." Therefore, we have the situation of a trade-mark, registered under the act, unlawfully used in interstate commerce by the defendant within the meaning of section 99. This is a complete case of infringement under the act, and the remedy therefor, and which is sought in this action, is provided by sections 99 and 100.

### Conclusion.

The case should be reversed, with directions to set aside the order of dismissal, to enter a decree, and to proceed in the matter

of accounting for profits and the ascertainment of damages in accordance with this opinion and the evidence in the case.

It is so ordered.

VAN VALKENBURGH, Circuit Judge.

I fully concur in the disposition of this case made by Judge STONE's excellent opinion, and, in the main, in the reasons assigned for the conclusion reached. It is clear, as he says, that the case falls primarily under section 99, title 15, USCA, with a portion of the relief asked provided in section 100. I cannot agree, however, that, under the facts in this case, appellants have failed to show the affixing of such trade-mark to and upon the receptacles of merchandise used in interstate commerce. Appellees systematically used containers, procured from another party, upon which the prohibited term "Ironite" was stenciled. They did this with full knowledge and with intent to deceive as to the origin of the commodity. In such case the spirit of the statutory requirement is satisfied as fully as though the infringing label had been manually affixed by appellees themselves. I think this construction finds substantial recognition in the decision of the Supreme Court in Bourjois & Co. v. Katzel, 260 U. S. 689, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567.