## NATIONAL LABOR RELATIONS BOARD v. W. H. KISTLER STATIONERY CO.

### No. 2290.

Circuit Court of Appeals, Tenth Circuit.

Oct. 10, 1941.

Paul E. Kuelthau, Regional Atty., of Denver, Colo. (Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Associate Gen. Counsel, Ernest A. Gross, Asst. Gen. Counsel, and Hilda D. Shea and Walter B. Wilbur, all of Washington, D. C., Attys., for National Labor Relations Board, on the brief), for petitioner.

Irving Hale, Jr., of Denver, Colo. (M. A. Lewis and J. B. Grant, both of Denver, Colo., on the brief), for respondent.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order directed against the respondent, the W. H. Kistler Stationery Company, directing it to cease and desist from refusing to bargain collectively with Denver Printing Pressmen and Assistants Union No. 40, herein called the Union, as the exclusive representative of all its printing pressmen and assistants in the offset, job and cylinder departments of respondent's printing department, and directing that upon request it bargain with the Union as the exclusive representative of its employees in this department. Respondent's position is that it is not engaged in commerce as defined in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and that therefore the Board is without jurisdiction to issue the order. There is no conflict in the evidence. The facts were all stipulated and the only question presented is one of jurisdiction.

Respondent is a Colorado corporation, with its principal place of business at Denver, Colorado. Its business is divided into four departments: printing, furniture, mimeograph, and stationery, all conducted under one roof. The printing department is the only one unionized. Respondent's gross sales approximate $1,000,000 per year. The printing department alone accounts for approximately $330,000 or one-third of respondent's total business. Of the amount of business done by the department in

question, twenty-five per cent, or $82,500, comes from sales to companies directly engaged in interstate business. $38,610 of this amount is shipped directly by respondent to consignees in states other than Colorado, and the balance, in the amount of $43,890, is delivered to concerns in Colorado and is in part distributed by them to branch offices in other states. Raw materials used in the printing department shipped into Colorado from without the state constitute ten per cent of a total of $100,000 of raw materials purchased annually for this department. Over two-thirds of respondent's annual business of $1,000,000 depends upon merchandise imported into Colorado.

The perimeter of the National Labor Relations Act is by now quite clearly defined and established by the decisions of the Supreme Court, and our function, when a question of jurisdiction is ·presented, is to determine whether the business under consideration lies within the outer borders of this field as established by the decisions of the Supreme Court.

 The principles which must guide us in resolving the questions presented are clear and well defined. The power of Congress to regulate interstate commerce is plenary and extends to all such commerce, both great and small. Hanley v. Kansas City Southern Ry. Co., 187 U.S. 617, 23 S.Ct. 214, 47 L.Ed. 333; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 83 L.Ed. 1014. The extent of the power over interstate commerce which Congress intended to exercise by the passage of the National Labor Relations Act is no longer open to debate. Any doubt in regard to that question was settled by the Supreme Court in the Fainblatt case, supra. There the court said: (page 607 of 306 U.S., page 672 of 59 S.Ct., 83 L.Ed. 1014)

"Examining the Act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis."

Viewed in the light of this pronouncement, we have no difficulty in concluding that the Board had jurisdiction to hear the complaint. Nor is it necessary in reaching that conclusion to consider that the dependence of more than two-thirds of respondent's business of $1,000,000 done in all of its departments is upon merchandise imported into the state of Colorado. An examination of the printing department establishes that the business of this department alone substantially affects interstate commerce. It alone does $330,000, or one-third, of respondent's total business. Twenty-five per cent of this comes from sales to companies directly engaged in interstate commerce. Again, of this amount, more than forty-six per cent is shipped directly to consignees in states other than Colorado. The remaining portion is shipped to concerns in Colorado who ship part of the merchandise thus received in interstate commerce. Nor are we limited in our consideration of the question to merchandise shipped by respondent to other states. We may also take into account raw materials which are purchased outside of the state and brought to the department to be processed there. It is all a part of interstate commerce. In addition to the merchandise sold directly in interstate commerce by this department and to firms engaged in interstate commerce, it purchases raw materials used in the department annually in the sum of $100,000. Ten per cent of this is purchased outside of the state and brought into the department. All of this leads us to conclude that the interstate business which this department does is more than a mere trifle, as that term is used in law.

It is our conclusion that respondent's department under consideration is engaged in interstate commerce within the intent and meaning of the Act and that a labor dispute therein would substantially affect such commerce.

It is conceded that Paragraph 1(b) of the Board's order is too broad and that it should be modified so as to bring it within the principles announced in National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

Paragraph 1(b) is therefore modified to read substantially as follows:

"In any other manner interfering with, restraining or coercing its employees in the exercise of their rights to bargain collectively through representatives of their own choosing, and to engage in concerted activi-

ties for the purpose of collective bargaining, as guaranteed in Section 7 of the National Labor Relations Act [29 U.S.C.A. § 157]."

So modified, the order will be enforced.