**CITY OF ST. LOUIS, Respondent,**

v.

**William S. STRECKFUS, Appellant.**

**No. 56572.**

Supreme Court of Missouri,
En Banc.

Jan. 14, 1974.

Rehearing Denied Feb. 11, 1974.

Robert W. Van Dillen, City Counselor, John J. Fitzgibbon, Associate City Counselor, St. Louis, for respondent.

Lucas & Murphy, Michael D. O'Keefe, St. Louis, for defendant-appellant.

HENLEY, Judge.

This is an appeal by William S. Streckfus (hereinafter defendant) from a judgment imposing a fine of $50 on his conviction of unlawfully permitting the operation of a coin-operated amusement or vending device on the Steamship Admiral without obtaining a license, in violation of ordinance No. 53585 of the Revised Ordinances of the City of St. Louis. This court has jurisdiction because the appeal involves construction of the Constitution of the United States.

The appeal was heard originally in Division Two where an opinion was adopted affirming the judgment of conviction. On order of the Division, the case was thereafter transferred to the court en banc where it was again argued and submitted. The Division opinion failed of adoption en banc and the case reassigned. Portions of the Division opinion are used in this opinion. We again affirm, holding, on the main issue presented, that the S.S. Admiral is engaged in interstate commerce, but that under the facts and circumstances of the case the ordinance assailed is not an undue burden thereon within the meaning of the commerce clause of the Federal Constitution.

Defendant is vice-president of Steamers Service, Inc., and as such is in charge of the operation of the S.S. Admiral, a passenger-carrying boat which conducts pleasure excursions out of the city of St. Louis on the Mississippi river. An area on the Admiral, known as the Arcade, contains numerous coin-operated machines. On August 8, 1969, the Admiral made a regular round-trip excursion on the river during which various passengers deposited coins in several coin-operated vending machines, for which they received candy, cigarettes, a lucky charm, and chewing gum. One witness testified that he played several devices on the boat, including an amusement device; another, that he played the juke box. All of the coin-operated machines on the boat were inspected on this trip by city officials for decals (which are issued upon payment of the annual license fee required by the ordinance) but none of the machines had decals on them; none bore a valid license sticker, as required by the ordinance.

Defendant's first point is that the city failed to prove the essential elements of the offense charged, in two respects. First, that he was charged with violation of ordinance No. 53585, which requires licenses for coin-operated *amusement devices* and *slot machines*, but that there was no evidence that any coin-operated amusement devices and slot machines were operated; that the testimony dealt only with the operation of coin-operated *vending machines*, which are required to be licensed under a different ordinance, ordinance No. 53584; that he was not charged with violating ordinance No. 53584. Defendant is mistaken in his contention that there was no evidence that any coin-operated amusement devices were operated by passengers on board the excursion trip August 8. Witness Dotson testified that he placed a coin in an amusement device on the boat;

that he played several devices which he inspected and found to be without city decals. Witness Martin testified that he played the juke box, which is an amusement device, not a merchandise vending machine; that he was playing it "while the boat was docking"; that he observed people using the machines—getting something out of the machines—and children "playing that football game," while the vessel was still docked. Witness Thompson testified that he used the lucky charm machine. The information charged that defendant did "unlawfully permit the operation of a coin-operated amusement or vending device without obtaining a license as prescribed by law," etc., which is broad enough to describe the act complained of in the language of both ordinances, and there having been evidence that ordinance No. 53585 was violated, there was no failure of proof.

In the second respect, it is claimed that there was no evidence to establish that any of the sales occurred within the limits of the city of St. Louis, the eastern boundary of which is in the middle of the main channel of the river. While there was no evidence locating the middle of the main channel, there was evidence that the machines were used while the boat was "swinging out"; when the boat was "against the barge after it came back in"; while the boat was "coming to dock"; "while docking"; "right at the barge"; and "when the boat was docked at the foot of Wharf Street." Under any and all of these descriptions the machines were being used within the city limits.

Defendant's last and main point is that the ordinance under which he was charged and convicted is unconstitutional and void because it violates the commerce clause (Art. I, § 8, clause 3) of the Constitution of the United States in that it imposes an undue burden on interstate commerce; that therefore the judgment of conviction is void and should be reversed. The city of St. Louis, in meeting and discussing this point, contends merely that the Admiral is not engaged in interstate commerce.

The evidence relative to this point is as follows. The Admiral is engaged in the business of conducting regular sight-seeing excursions or cruises on the Mississippi river for the pleasure and amusement of fare-paying passengers. The only passengers are those who board ship at St. Louis and return to that point; none are taken on and none disembark elsewhere during the cruise. In other words, the excursion is a non-stop, round-trip cruise on the river. During the course of each excursion trip, the Admiral leaves her mooring in the city of St. Louis, crosses and recrosses the boundary line between the states of Missouri and Illinois (the middle of the main channel of the river), cruises in waters of both states and in waters adjoining the cities of Cahokia, East St. Louis and East Carondelet, in Illinois, as well as those adjoining the county of St. Louis, and returns to the point from which she left. So far as the record shows she carries no freight, mail or express, and is engaged in no other business on these trips.

Defendant also produced evidence that each of these Illinois cities and St. Louis county have an ordinance which levies a license tax on coin-operated amusement devices operated within their respective corporate limits. Defendant asserts in argument that the result of these ordinances adopted by the several municipal corporations, including the city of St. Louis, is to place upon the commerce cumulative burdens not placed on local commerce, in violation of the commerce clause. We note, however, in passing, that the record is silent as to whether the Admiral is within the corporate boundaries of the Illinois cities while traversing the waters adjoining them, or, if within those boundaries, whether these amusement devices are then being operated.

Transportation is commerce. In Cornell Steamboat Co. v. United States et al., 321 U.S. 634, 638–641, 64 S.Ct. 768, 88 L.Ed.

978 (1944), the Supreme Court of the United States held that transportation by water,[1] like transportation by rail[2] or by bus,[3] from one point to another in the same state which passes through another state in the course of the transportation is interstate commerce. Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 68 S. Ct. 1260, 92 L.Ed. 1633 (1948), involved an attack upon the constitutionality of a tax levied by New York on the gross receipts of a common carrier from transportation between two points in New York, but through New Jersey and Pennsylvania. Greyhound contended that this transportation was not interstate commerce. Holding that it was, Mr. Justice Frankfurter, speaking for the majority, had this to say in reviewing several cases, including some of the cases cited in footnotes 1, 2 and 3, supra: "It is too late in the day to deny that transportation which leaves a State and enters another State is 'Commerce * * * among the several states' simply because the points from and to are in the same State. [Id. at 655–656, 68 S.Ct. at 1262.]

\* \* \*

" 'Regulation and commerce among the States both are practical rather than technical conceptions, and, naturally, their limits must be fixed by practical lines.' Galveston, Harrisburg and San Antonio R. Co. v. Texas, 210 U.S. 217, 225 [28 S.Ct. 638, 52 L.Ed. 1031]. But to label transportation across an interstate stream 'local commerce' for some purposes when it is 'interstate commerce' in other relations, see, e. g., Covington & Cincinnati Bridge Co. v. Kentucky, 154 U.S. 204 [14 S.Ct.

1087, 38 L.Ed. 962], is to use loosely terms having connotations of constitutional significance. To call commerce in fact interstate 'local commerce' because under a given set of circumstances, as in the *Lehigh Valley* case, a particular exertion of State power is not rendered invalid by the Commerce Clause is to indulge in a fiction. Especially in the disposition of constitutional issues are legal fictions hazardous, because of the risk of confounding users and not merely readers. The kind of confusion to which the *Lehigh Valley* opinion has given rise results from employing a needless fiction—calling commerce local which in fact is interstate—as a manner of stating that a particular exercise of State power is not invalid even though it affects interstate commerce. The difficult task of determining whether a phase of commerce, concededly interstate, is subject to a particular incidence of State regulation, through taxation or otherwise, is not lessened by calling interstate commerce local commerce in order to sustain its local control. To state this persistent and protean problem of our federalism in the form of a question-begging fiction, is not to answer it. [Id. at 659–660, 68 S.Ct. at 1264.]

\*  \*  \*  \*  \*  \*

"Of course we are dealing here with 'interstate commerce'." [Id. at 661, 68 S.Ct. at 1265.]

■ The transportation of passengers in this case by boat on a boundary river in a continuous non-stop journey from and to the same point in Missouri during which the boat crosses the boundary line into and traverses waters of Illinois is interstate

1. See also Bob-Lo Excursion Co. v. Michigan, 333 U.S. 28, 34, 68 S.Ct. 358, 92 L.Ed. 455 (1948), where transportation of passengers on round-trip pleasure excursions by boat on the Detroit river from Detroit upstream 15 miles to Bois Blanc island on the Canadian side of the river is held to be foreign commerce. Cf. Port Richmond Ferry v. Hudson County, 234 U.S. 317, 326, 34 S.Ct. 821, 58 L.Ed. 1330 (1914).

2. Hanley v. Kansas City Southern Ry. Co., 187 U.S. 617, 23 S.Ct. 214, 47 L.Ed. 333

(1903) ; Missouri Pacific Railroad Co. v. Stroud, 267 U.S. 404, 45 S.Ct. 243, 69 L.Ed. 683 (1925) ; Lehigh Valley Railroad Co. v. Pennsylvania, 145 U.S. 192, 12 S.Ct. 806, 36 L.Ed. 672 (1892).

3. Central Greyhound Lines, Inc. v. Mealey et al., 334 U.S. 653, 655–656, 68 S.Ct. 1260, 92 L.Ed. 1633 (1948) ; Sprout v. South Bend, 277 U.S. 163, 48 S.Ct. 502, 72 L.Ed. 833 (1928).

commerce. Cornell Steamboat Co. v. United States, supra; Central Greyhound Lines, Inc. v. Mealey, supra. To say that this transportation is confined to Missouri is to ignore a fact; to say that this commerce is not interstate would be to indulge in pure fiction.

Having reached this conclusion, we turn to the question of whether the tax levied is an undue burden on or interference with such commerce and the ordinance imposing it unconstitutional. If it is, the conviction of defendant must be set aside.

The significant facts in this case relevant to this question are analogous to the facts in Bob-Lo Excursion Co. v. Michigan, supra, (footnote 1), in which the court held that "[i]n view of the special local interest attaching to [the Excursion Company's] business in the particular circumstances of this case, such application of the state Act to [it], although engaged in foreign commerce, did not contravene the Commerce Clause of the Federal Constitution." In *Bob-Lo* the court approved interference with or regulation of foreign commerce by the state through application of its law requiring public conveyances to grant passage to all persons regardless of race, creed or color. The only real difference between that case and this is in the nature of the law through which the state asserts its power to interfere with the commerce. That the states may interfere with and that they have regulatory powers over interstate commerce, under proper factual circumstances, has long been established. Bob-Lo Excursion Co. v. Michigan, supra, at 1. c. 37 of 333 U.S., 68 S.Ct. 358; Port Richmond Ferry v. Hudson County, 234 U.S. 317, 327, 331–332, 34 S.Ct. 821, 58 L. Ed. 1330 (1914).

■ We have the view that the facts in this case justify application of the St. Louis license ordinance to the Admiral and, through the vessel, to defendant. The Admiral and her sight-seeing excursions are an integral part of the St. Louis riverfront. Moored at her home on the Mississippi at the foot of Washington avenue, she sits between two world-renowned monuments, the historic nineteenth century Eads bridge on her north and the twentieth century Gateway Arch on her south side. She is younger than the bridge and older than the symbol of the gateway to the west, and almost as well known and loved by mid-westerners. Although afloat, with her only physical ties to the land being rope lines and a gangplank, she is as much a part of the community and the riverfront scene as her famous neighbors with their ties of steel and concrete, and crossing the boundary line between the states does not make her any less a part thereof. She is an amusement adjunct of the city, a highly localized segment of interstate commerce whose business is of greater concern to St. Louis and Missouri than to Illinois and her municipalities. The only connection the Admiral has with Illinois and her cities is the purely incidental occurrence of traversing her waters and waters adjoining her cities. Her passengers contract for, expect, and are provided with an uninterrupted excursion on the river for their pleasure and entertainment. All board at St. Louis and all return to that point, no matter whether their homes are in Illinois or Missouri, or elsewhere. None expect to and none leave the vessel until she has completed the journey at the point from which she left. Her only connection with Illinois citizens is with those who first cross the river by other means, board her at St. Louis for the non-stop, round-trip cruise, and return to their homes by the same roundabout route; none can board her from an Illinois port or elsewhere after she has embarked on the excursion. The business of transporting passengers and providing them with sustenance and entertainment, including the amusement devices in the Arcade, is all identified with the city of St. Louis, is of purely local concern and has no relation to the state of Illinois or any of its municipalities. The same is true of the business of supplying the Admiral with supplies necessary to navigation in the transportation of her pas-

sengers. To paraphrase a part of Bob-Lo Excursion Co. v. Michigan, (333 U.S. at 35, 68 S.Ct. 358), it would be difficult, if not impossible, to find a substantial business engaged in interstate commerce on the inland waters more closely bound to the community and its economic and social life which is at the same time of such little concern to that commerce. We hold that in the circumstances of this case imposition of the license tax on the amusement devices on board the Admiral is not an undue burden upon or interference with interstate commerce and does not contravene the commerce clause of the Federal Constitution.

■■ As to defendant's contention that the addition of the license taxes levied by other municipalities has imposed on this commerce cumulative burdens not imposed on local commerce, we note that the burden of proof is on defendant to show that these burdens in fact exist. Washington-Oregon Shippers Cooperative Association, Inc. v. Schumacher et al., 59 Wash.2d 159, 367 P.2d 112, 117 [4] (1962). The proof here is that Illinois cities and St. Louis county have adopted ordinances which levy license taxes on coin-operated amusement devices. It has not been shown these cities or the county have attempted to collect or have even taken the position that these amusement devices are subject to their taxing authority, as has the city of St. Louis. Indeed, on the basis of the facts before us, it is extremely doubtful whether they may be enforced against this defendant. But, we hasten to recognize we may not and do not rule on their validity. It will be time enough to consider the effect, if any, of the alleged cumulative burden of these taxes on interstate commerce when, and if, defendant meets his burden of showing that a court with jurisdiction thereof has ruled they are enforcible against the Admiral on these facts. That burden has not been met in this case.

The judgment is affirmed.

All concur.