LA CROSSE QUEEN, INC., Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent-Respondent.†

Court of Appeals

*No. 95–2754. Submitted on briefs March 11, 1996.—Decided April 4, 1996.*

(Also reported in 549 N.W.2d 261.)

†Petition to review granted.

538

For the petitioner-appellant the cause was submitted on the briefs of *Paul J. Munson* of *McDonald & Munson* of La Crosse.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gerald S. Wilcox*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

VERGERONT, J. This appeal concerns the exemption from sales tax for commercial vessels primarily engaged in interstate commerce, § 77.54(13),

STATS.[1] La Crosse Queen, Inc. appeals from a judgment affirming the determination of the Wisconsin Tax Appeals Commission that payments it received for the lease of an excursion vessel, the La Crosse Queen IV, were not exempt because the vessel was not primarily engaged in interstate commerce. We conclude that the vessel was engaged in interstate commerce during the years in question, but we are unable to decide on this record whether it was "primarily" engaged in interstate commerce. We therefore reverse the judgment with directions to the trial court to remand to the commission for this determination.

## BACKGROUND

During the years 1989 through 1991, La Crosse Queen, Inc. was the owner of an excursion vessel named the La Crosse Queen IV and leased it to Riverboats America, Inc. The vessel carries passengers on sightseeing and dinner cruises and operates exclusively on the Mississippi River. The western boundary of the State of Wisconsin is the center of the main channel of the Mississippi River.[2] All passengers embark and disembark at La Crosse, Wisconsin. Approximately seventy-five percent of the passengers carried by the vessel are from states other than Wisconsin.

---

[1] Section 77.54(13), STATS., provides an exemption from general sales and use taxes as follows:

> The gross receipts from the sales of and the storage, use or other consumption in this state of commercial vessels and barges of 50-ton burden or over primarily engaged in interstate or foreign commerce or commercial fishing, and the accessories, attachments, parts and fuel therefor.

[2] *See* WIS. CONST. art. II, § 1.

On the one and one-half hour cruise, the vessel goes upstream, crosses over the Wisconsin boundary into Minnesota territorial waters, travels to the lock and dam at Dresbach, Minnesota, then turns around and returns to La Crosse. There is a longer four-hour cruise that serves a meal and includes this same route. On this cruise and on charter cruises, the vessel typically "locks through" the lock at Dresbach before it turns around. There is also a two-hour dinner cruise that goes south on the river and then turns around to return to La Crosse. A guide provides information about the river and its history during the cruises. No passengers disembark at any point during the cruises.

The vessel operates under Interstate Commerce Commission (ICC) authority number WC-1172; until the time of deregulation, the vessel was required to file tariff reports with the ICC. Because the Mississippi River is considered an interstate waterway, the vessel must be, and is, certified by the United States Coast Guard, and must report annually to the Army Corps of Engineers.

The owners of La Crosse Queen, Inc. purchased the business from Roy Franz in 1975, although the vessel they purchased then was not the La Crosse Queen IV. Franz challenged the imposition of a sales tax on the ticket sales for the cruises on the ground, among others, that it was an unconstitutional burden on interstate commerce. In *Roy A. Franz, d/b/a The Big Indian Boat Lines v. DOR*, No. 159-122 (Dane County Cir. Ct. July 30, 1979), the Dane County Circuit Court determined that the tax was valid and, in particular, determined that no interstate commerce was involved, relying on *Mayor of Vicksburg v. Streckfus Steamers*, 150 So. 215 (Miss. 1933). The method and nature of the operation of the La Crosse

Queen IV is basically the same as the operation of Franz's business, except that the La Crosse Queen IV exceeds fifty tons, whereas Franz's vessel did not.

The Wisconsin Department of Revenue issued an assessment of sales tax on the gross receipts from the lease payments for the years 1989 through 1991. The taxpayer appealed to the Wisconsin Tax Appeals Commission. The commission determined that the vessel was not primarily engaged interstate commerce because the rides were purely recreational and not an essential part of the passengers' interstate travel. The commission relied on the *Franz* decision, citing approvingly from *Mayor of Vicksburg*, and on the "integral step in interstate movement" criterion from *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). The trial court affirmed.

## DISCUSSION

■

We review the decision of the commission, not the trial court. *See Port Affiliates, Inc. v. DOR*, 190 Wis. 2d 271, 279, 526 N.W.2d 806, 809 (Ct. App. 1994). Whether the vessel is primarily engaged in interstate commerce within the meaning of § 77.54(13), STATS., presents a question of law. *See Town of La Pointe v. Madeline Island Ferry Line, Inc.*, 179 Wis. 2d 726, 736, 508 N.W.2d 440, 444 (Ct. App. 1993). We are not bound by an agency's conclusions of law, although we give varying degrees of deference to the agency depending on the particular circumstances. *William Wrigley, Jr. Co. v. DOR*, 160 Wis. 2d 53, 69-71, 465 N.W.2d 800, 806-07 (1991), *rev'd on other grounds*, 505 U.S. 214 (1992).

■

We conclude that the proper degree of deference in this circumstance is "due weight," rather than "great weight." *See Wrigley*, 160 Wis. 2d at 70-71, 465 N.W.2d at 806-07 (due weight, rather than great weight, is appropriate where the question is very nearly one of first impression and the agency has not developed expertise or a body of precedent on the question). Since there is no statutory definition of "interstate commerce," an interpretation of § 77.54(13), STATS., involves applying the most appropriate definition from court decisions that address Congress's power to regulate interstate commerce.[3] This is what the commission did when it relied on *Yellow Cab Co.* and on

---

[3] Article I, section 8, clause 3 of the United States Constitution gives Congress the power to "regulate commerce . . . among the several states." The Commerce Clause has been interpreted to prohibit certain state taxation on interstate commerce even when Congress has failed to legislate on the subject. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. —, —, 131 L.Ed.2d 261, 268 (1995). However, state taxation is not invalid under the commerce clause if it is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state. *Oklahoma Tax Comm'n*, 514 U.S. at —, 131 L.Ed.2d at 270.

We emphasize that we are not confronted in this case with the question of the constitutionality of a sales tax on the gross receipts from the lease of the vessel. We are confronted only with a question of statutory construction—whether the vessel is primarily engaged in interstate commerce under § 77.54(13), STATS. However, because the statute does not define interstate commerce, we look to cases defining this term in the context of the Commerce Clause and Congress's authority derived from the Commerce Clause.

*Mayor of Vicksburg* in affirming the assessment. This is what we have done in interpreting "interstate traffic" in § 70.111(3), STATS., which exempts from general property taxes "[w]atercraft employed regularly in interstate traffic." *Town of La Pointe*, 179 Wis. 2d at 730, 508 N.W.2d at 442. The commission is not in a better position than the reviewing court to decide this type of statutory interpretation, which does not depend on the commission's specialized or technical knowledge. The commission has on only one prior occasion interpreted the term "interstate commerce" in the context of § 77.54(13), or in any similar context. *See Washington Island Ferry Line, Inc. v. DOR*, WTAC Nos. 91-S-126, 91-S-385 (March 16, 1993), *aff'd*, No. 93-CV-1442 (Dane County Cir. Ct. Dec. 4, 1993) (Washington Island Ferry Line operates primarily in interstate commerce because substantial amount of goods and persons transported originates from or is destined to points outside Wisconsin). The issue we address is therefore very nearly one of first impression for the commission.

■

Transportation between points within a state over a route in another state is interstate commerce. *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653, 661 (1948). That definition was applied to transportation by water in *Cornell Steamboat Co. v. United States*, 321 U.S. 634 (1944). In *Cornell*, the company's tugboats carried no cargo but moved cargo vessels from one New York port to another New York port, crossing from New York territorial waters into New Jersey territorial waters on a substantial portion of these trips. The Court concluded that this was interstate commerce within the meaning of the Interstate Commerce Act. *Cornell*, 321 U.S. at 638-41.

*Central Greyhound Lines* and *Cornell* were relied on by the Missouri Supreme Court in analyzing whether an excursion boat with operations similar to those of the La Crosse Queen IV was engaged in interstate commerce in *City of St. Louis v. Streckfus*, 505 S.W.2d 70 (Mo.), *appeal dismissed*, 419 U.S. 810 (1974). Streckfus operated an excursion boat that conducted tours on the Mississippi River from the City of St. Louis, Missouri, returning to the City of St. Louis, with no disembarkation at any other point. During the cruise, the boat crossed and recrossed the boundary line between the states of Missouri and Illinois (the middle of the main channel of the river). Streckfus was fined for permitting the operation of coin-operated vending devices on the boat without a license from the City of St. Louis. He challenged this on the ground that the fine imposed an undue burden on interstate commerce. After discussing *Cornell, Central Greyhound Lines* and a number of other United States Supreme Court decisions, the Missouri court concluded:

> The transportation of passengers in this case by boat on a boundary river in a continuous non-stop journey from and to the same point in Missouri during which the boat crosses the boundary line into and traverses waters of Illinois is interstate commerce. *Cornell Steamboat Co. v. United States, supra; Central Greyhound Lines, Inc. v. Mealey, supra.*

*Streckfus*, 505 S.W.2d at 73-74. The Missouri court then decided that the license requirement was not an undue burden on interstate commerce.

The commission's decision does not discuss the definition of interstate commerce established in *Cornell*. Instead, it relies on *Mayor of Vicksburg*, which

was decided before *Cornell. Mayor of Vicksburg* relied on United States Supreme Court cases decided prior to *Cornell* and *Central Greyhound Lines* in concluding that an excursion vessel leaving from and returning to Vicksburg, Mississippi, and crossing over to the Louisiana side of the river en route, was not engaged in interstate commerce. *Mayor of Vicksburg*, 150 So. at 218. In its brief on appeal, the department of revenue also relies on a United States Supreme Court decision predating *Cornell* and *Central Greyhound Lines*— *Cincinnati, P.B.S. & P. Packet Co. v. Bay*, 200 U.S. 179 (1906). The department cites this statement:

> It would be an extravagant consequence to draw from [existing case law] that the contract was within the Sherman act because the boats referred to might sail over soil belonging to Kentucky in passing between two Ohio points.

*Cincinnati, P.B.S. & P. Packet Co.*, 200 U.S. at 183.

The quoted language is dicta. *Cincinnati, P.B.S. & P. Packet Co.* concerned the question of whether a noncompete clause in a contract for the sale of vessels violated the Sherman Act. The court decided that, assuming the contract did affect interstate commerce, this was not the dominant purpose of the contract. More importantly, what struck the Court as "an extravagant consequence" to draw from existing case law in 1906 was the holding in *Cornell* thirty-eight years later, at least with respect to the Interstate Commerce Act.

The commission also relied on the definition of interstate commerce utilized in *Yellow Cab Co.* There the Court held, in the context of a Sherman Anti-Trust Act claim, that local taxicabs conveying interstate train passengers to and from the train station and their

homes were not engaged in interstate commerce because their service was not an integral part of the interstate transportation of the passengers. *Yellow Cab Co.*, 332 U.S. at 233. The commission concluded, and the department argues on appeal, that the trip on the La Crosse Queen IV was not an integral part of the interstate transportation for those passengers who came from outside Wisconsin. We agree with this conclusion. However, this definition of interstate commerce is applicable when the transportation at issue is solely within the boundaries of one state. *See Town of La Pointe*, 179 Wis. 2d at 737, 508 N.W.2d at 444 ("When persons travel between states and a portion of their journey requires transportation by an independent agency solely within the boundaries of one state, that journey is still interstate in character.") (citing *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947)).[4] Application of the *Yellow Cab Co.* test assumes that the La Crosse Queen IV operates solely within Wisconsin and then asks whether it is an integral part of the interstate journey of the passengers. The *Yellow Cab Co.* test does not address the question whether the vessel operates in interstate commerce because it travels in Minnesota territorial waters.

Having given due weight to the commission's interpretation of "interstate commerce," we conclude

---

[4] The commission correctly applied the *Yellow Cab Co.* test in *Washington Island Ferry Line, Inc. v. DOR*, WTAC Nos. 91-S-126, 91-S-385 (March 16, 1993), *aff'd*, No. 93-CV-1442 (Dane County Cir. Ct. Dec. 4, 1993), because the Washington Island Ferry Line operated wholly within the state, carrying goods and passengers that originated from or were destined for points outside the state.

that its interpretation is erroneous. Applying the definition of "interstate commerce" in *Cornell*, we conclude that the La Crosse Queen IV was engaged in interstate commerce when it crossed into Minnesota territorial waters on its excursion routes.[5] The next question is whether it was "primarily" engaged in interstate commerce. Because of the commission's interpretation of the phrase "interstate commerce," it did not make this determination. The trial court must therefore remand to the commission for this purpose.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[5] There is no suggestion that the crossing into Minnesota territorial waters was for the purpose of avoiding taxation or regulation. *Compare Eichholz v. Public Serv. Comm'n*, 306 U.S. 268 (1939) (where merchandise is transported from one point in a state to another point in the same state by means of a circuitous route into another state, such movement is a subterfuge to avoid state regulation and does not convert the commerce into interstate commerce). *See also Mayor of Vicksburg v. Streckfus Steamers*, 150 So. 215, 218 (Miss. 1933) (captain admitted touching at point in Louisiana for sole purpose of trying to make trip one in interstate commerce so as to evade privilege tax of City of Vicksburg, Mississippi).