LaCrosse Queen, Inc., Petitioner-Appellant,

v.

Wisconsin Department of Revenue, Respondent-Respondent-Petitioner.

Supreme Court

*No. 95–2754. Oral argument January 28, 1997.—Decided April 18, 1997.*

(Also reported in 561 N.W.2d 686.)

For the respondent-respondent-petitioner the cause was argued by *Gerald S. Wilcox*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the petitioner-appellant there was a brief by *Paul J. Munson* and *McDonald & Munson*, La Crosse and oral argument by *Paul J. Munson*.

¶ 1. DONALD W. STEINMETZ, J. The issue in this case is whether a boat leased by La Crosse Queen, Inc. to Riverboats America, Inc. was used primarily in interstate commerce so as to exempt the gross receipts from said lease from sales tax pursuant to Wis. Stat. § 77.54(13)[1] for the years from 1989 through 1991. Because we find that the La Crosse Queen was not engaged in interstate commerce during this time, we hold that La Crosse Queen, Inc., was not entitled to the tax exemption provided pursuant to Wis. Stat. § 77.54(13).

¶ 2. On October 14, 1992, the Department of Revenue (Department) issued an assessment of sales taxes against the taxpayer on the gross receipts from the lease payments. The taxpayer appealed, claiming that such gross receipts are exempt under Wis. Stat. § 77.54(13), since the La Crosse Queen has a burden of over 50 tons and is primarily engaged in interstate commerce. The Tax Appeals Commission (Commission) and the Dane County Circuit Court, the

---

[1] Wis. Stat. § 77.54(13) exempts from taxes "[t]he gross receipts from the sales of and the storage, use or other consumption in this state of commercial vessels and barges of 50-ton burden or over primarily engaged in interstate or foreign commerce or commercial fishing, and the accessories, attachments, parts and fuel therefor."

Honorable Michael B. Torphy, both held that La Crosse Queen, Inc. was not entitled to the exemption because it was not engaged in interstate commerce. Having concluded that La Crosse Queen, Inc. was not engaged in interstate commerce, neither the Commission nor the circuit court proceeded to address the issue of whether it was "primarily" engaged in said commerce. The court of appeals reversed the circuit court decision on the grounds that the taxpayer was engaged in interstate commerce, and remanded the case to the Commission to determine if the taxpayer was "primarily" engaged in interstate commerce. *La Crosse Queen, Inc. v. Wisconsin Dept. of Revenue*, 201 Wis. 2d 537, 549 N.W.2d 261 (Ct. App. 1996). We now reverse the court of appeals' decision.

¶ 3. During the years in issue, 1989 through 1991, the taxpayer was the owner and lessor of a boat known as the La Crosse Queen IV (La Crosse Queen). The boat, an excursion paddle wheeler exceeding 50 tons, was leased to a related corporation, Riverboats America, Inc., for the purpose of providing sightseeing and dinner cruises exclusively on the Mississippi River. The boat is operated under Interstate Commerce Commission (ICC) authority number WC–1172 which was transferred to taxpayer in 1975 when the boat was purchased from Roy A. Franz and the business was purchased from his corporation, Big Indian Boat Lines. The taxpayer notes in its brief that until the time of deregulation, the vessel was required to file tariff charges with the Interstate Commerce Commission.

¶ 4. The previous owner of the boat, Mr. Franz, had challenged the imposition of the sales tax on its sales of tickets for the cruises on the Mississippi claiming, among other things, that the sales tax resulted in an unconstitutional burden on interstate commerce. In

an opinion authored by Dane County Reserve Circuit Judge, George R. Currie, the court held that the sales tax did not burden commerce because no interstate commerce was involved in Franz's operations. *Franz v. Wisconsin Dept. of Revenue*, Case No. 159–122 (Dane County Cir. Ct., July 30, 1979).

¶ 5. The taxpayer's president, Linda Sayther, conceded that her method of operation and its purpose during 1989, 1990, and 1991 was "basically the same" as that of Roy Franz, her predecessor. Thus, according to the La Crosse Queen's president, the primary purpose of the La Crosse Queen's operation during the period in question was recreation, entertainment, and dining. The cruises on the La Crosse Queen were advertised as one and one-half hour cruises on the Mississippi River. It is not contested that during her excursions from 1989 through 1991, the La Crosse Queen crossed between Wisconsin and Minnesota waters on the Mississippi River.

¶ 6. The La Crosse Queen's passengers are individuals and groups from Wisconsin and other states. On her northern trip, the La Crosse Queen loads at a wharf in La Crosse, travels up the river several miles to the lock and dam north of the I–90 bridge, turns around, and returns to the same wharf in La Crosse. Since there are no facilities where the La Crosse Queen can dock on either her northern or southern trip, the passengers never disembark until their return to the wharf in La Crosse. Thus, all passengers embark and disembark at the same dock in La Crosse, Wisconsin.

[1–3]

¶ 7. "Whether a person is engaged in interstate commerce is a question of law, and we review questions of law de novo." *Town of LaPointe v. Madeline Island Ferry Line, Inc.*, 179 Wis. 2d 726, 736, 508 N.W.2d

440 (Ct. App. 1993) (citation omitted). This court may substitute our judgment for that of the Commission. *See Frisch, Dudek & Slattery, Ltd. v. Wisconsin Dept. of Revenue*, 133 Wis. 2d 444, 446, 396 N.W.2d 355 (Ct. App. 1986), citing *Department of Revenue v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 48, 257 N.W.2d 855 (1977). However, this court will accord due weight to an agency decision where the agency possesses particular expertise in an area of law. *See id.* In the case at bar, the Commission possesses no special expertise because it has faced the task of interpreting the term "interstate commerce" in light of Wis. Stat. § 77.54(13) on only one previous occasion.[2] Therefore, we owe the decision of the Commission no deference.

¶ 8. Tax exemption statutes "are to be strictly construed against the granting of the same, and the one who claims an exemption must point to an express provision granting such exemption by language which clearly specify the same, and thus bring himself clearly within the terms thereof." *Ramrod, Inc. v. Department of Revenue*, 64 Wis. 2d 499, 504, 219 N.W.2d 604 (1974), citing *Fall River Canning Co. v. Department of Taxation*, 3 Wis. 2d 632, 637, 89 N.W.2d 203 (1958); *Comet Co. v. Department of Taxation*, 243 Wis. 117, 123, 9 N.W.2d 620 (1943). Doubts are to be "resolved against the exemption and in favor of taxability." *Revenue Dept. v. Greiling*, 112 Wis. 2d 602, 605, 334 N.W.2d 118 (1983), citing *First Nat'l. Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).

---

[2]*See Washington Island Ferry Line, Inc. v. Dept. of Revenue*, Wisconsin Tax Appeals Commission, Nos. 91-S–126, 91-S–385 (March 16, 1993), *aff'd*, Wisconsin Tax Reports, CCH ¶ 400–029 (Dane County Cir. Ct., December 4, 1993).

¶ 9. The United States Supreme Court in *Cincinnati P., B., S. & P. Packet Co. v. Bay*, 200 U.S. 179 (1905) held that a contract governing a towing and barge business between various points in the state of Ohio did not involve interstate commerce simply because the boats "might sail over soil belonging to Kentucky in passing between two Ohio points." *Id.* at 183. Likewise, the passengers in the instant case who embark and disembark at the same point in Wisconsin are in no way involved "with commerce among the states" simply because they might sail over Minnesota waters during their excursion.

¶ 10. When the taxpayer's boat picks up passengers at the wharf in La Crosse for the purpose of an excursion cruise either up or down the Mississippi River and then returns them to the same wharf in La Crosse, it is not conducting interstate commerce or interstate business. Although the La Crosse Queen crosses over into Minnesota waters, there is no commerce or business carried on between Wisconsin and Minnesota as a result of the excursion cruises. The people who use the taxpayer's boat are not using it for the purpose of being transported from Wisconsin to Minnesota, but rather for the purpose of recreation and entertainment.

¶ 11. The court of appeals and the taxpayer in this case rely on several cases in support of the contention that the La Crosse Queen was engaged in interstate commerce during 1989, 1990, and 1991. These cases are all readily distinguishable from the case at bar.

¶ 12. In *Cornell Steamboat Co. v. United States*, 321 U.S. 634 (1944), the Court held that the ship's transportation from one point in New York to another point in New York traversing New Jersey waters was

447

subject to regulation by the Interstate Commerce Commission. Similarly, in *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653 (1948), the Court held that transportation between points within the same state, New York, over routes utilizing New Jersey and Pennsylvania highways was interstate commerce. The Court provided the following definition of interstate commerce:

> The term 'interstate commerce' means commerce between any place in a State and any place in another State or between places in the same State through another State, whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water.

*Id.* at 661 (citations omitted).

¶ 13. The travel of the La Crosse Queen is distinguishable from that of the carriers in *Cornell Steamboat* and *Central Greyhound Lines*. In this case, the purpose of the excursions on the La Crosse Queen was recreation and entertainment; it was not intended by anybody to serve as transportation. Additionally, the voyages of the La Crosse Queen were not from one point in Wisconsin to another place in Minnesota, or even from one place in Wisconsin to another place in Wisconsin. Instead, the excursions on the La Crosse Queen during the years in issue started and finished at the same dock in the same city in the same state. Such a travel pattern is not within the purview of the definition of interstate commerce established in *Central Greyhound Lines*.

¶ 14. The taxpayer and the court of appeals also rely on two Wisconsin cases in support of the argument that the La Crosse Queen was engaged in interstate

commerce during the years in issue. *Town of LaPointe v. Madeline Island Ferry Line, Inc.*, 179 Wis. 2d 726, 508 N.W.2d 440 (Ct. App. 1993); *Washington Island Ferry Line, Inc. v. Dept. of Revenue*, Wisconsin Tax Appeals Commission, Nos. 91-S–126, 91-S–385 (March 16, 1993), *aff'd*, Wisconsin Tax Reports, CCH ¶ 400–029 (Dane County Cir. Ct., December 4, 1993). In each of these cases, the respective courts held that the ferry was engaged in interstate commerce even though it traveled between two points in the same state, Wisconsin. However, the service of each ferry was "an absolute necessity because an interstate vehicular traveler cannot complete a journey to or from the island without taking the Ferry." *Madeline Island Ferry*, 179 Wis. 2d at 738. In each case, the ferry had contracts with the United States Postal Service, United Parcel Service (UPS), and Federal Express. Each ferry also served as the sole means of transportation for cars, buses, cargo, and people between the mainland and the island. In each case, the ferry was a necessary link in completing the chain of interstate commerce. *See id.* at 729.

¶ 15. The activity of the La Crosse Queen can be readily distinguished from that involved in these other Wisconsin cases. First and foremost, the purpose of the La Crosse Queen's excursions is different from that of the Madeline Island Ferry and the Washington Island Ferry. The movement of the La Crosse Queen in interstate waters is not for the purpose of facilitating commerce among the States. Passengers embark on the La Crosse Queen for entertainment and recreation, not for transportation from one point to another. Further, the voyages of the La Crosse Queen do not constitute a necessary link for the completion of an

interstate journey. The La Crosse Queen's journey ends where it begins, with no stops in between. Her voyages do not constitute interstate commerce.

¶ 16. The activities of the La Crosse Queen are best compared to those of the taxicabs in the case of *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). *Yellow Cab* involved an action under the Sherman Anti-Trust Act by the United States against Yellow Cab and others for relief against an alleged monopoly conspiracy. In discussing the theory that interstate commerce may have been involved when taxicabs in Chicago were used to transport people and luggage to and from railroad stations, the Court stated as follows:

> We hold, however, that such transportation is too unrelated to interstate commerce to constitute a part thereof. . . . [I]n transporting passengers and their luggage to and from Chicago railroad stations. . .their service is confined to transportation 'between any two points within the corporate limits of the City.'

*Id.* at 230–231. The Court proceeds to explain that "[I]n short, their relationship to interstate transit is only casual and incidental." *Id.* at 231.

██

¶ 17. If the taxicabs described above were not engaged in interstate commerce, then certainly the activities of the La Crosse Queen do not constitute interstate commerce. Like the cabs, the service of the La Crosse Queen is confined to only one city, and not even to two separate points within that same city. The relationship of the La Crosse Queen to interstate commerce is, at best, "casual and incidental." The

excursions on the La Crosse Queen are not a necessary link in the interstate travels of her passengers.

■

¶ 18. In order for an activity to qualify as interstate commerce, there must not only be interstate movement but also interstate business. There was none here involved. *See Mayor of Vicksburg v. Streckfus Steamers*, 150 So. 215, 218 (Miss. 1933). *See also Meyer v. St. Louis County*, 602 S.W.2d 728, 738 (Mo. App. 1980). The taxpayer's boat is not involved in the transfer of any goods, money, or people from Wisconsin to any other state. The simple fact that persons from other states take excursions on the La Crosse Queen does not result in those persons being involved in the stream of interstate commerce. The voyages of the passengers start and finish in the same place. While this may be considered "interstate travel," it is not sufficient to rise to the level of "interstate commerce."

■

¶ 19. Because we find that the La Crosse Queen was not engaged in interstate commerce during the years in issue, we hold that La Crosse Queen, Inc., was not entitled to the tax exemption provided pursuant to Wis. Stat. § 77.54(13). Since we have determined that the La Crosse Queen is not involved in interstate commerce, it is unnecessary for us to discuss whether the vessel is "primarily" engaged in interstate commerce.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 20. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). Although the majority's conclusion that the lease payments for the use of the La Crosse Queen are taxable under the Wisconsin sales

tax may ultimately be correct, I dissent because I conclude, as did the court of appeals, that the cause must be remanded to the tax appeals commission.

¶ 21. I would, however, state the issue on remand in a different fashion than did the court of appeals. I conclude that whether the La Crosse Queen was primarily engaged in interstate commerce within the meaning of Wis. Stat. § 77.54(13) (1989–90)[1] requires interpretation of the Commerce Clause of the federal Constitution. U.S. Const. art. I, § 8, cl. 3. Because I believe that the parties should be afforded an opportunity to brief this issue, I would remand the cause to the circuit court for remand to the tax appeals commission to determine whether the Commerce Clause, and therefore § 77.54(13), require that any portion of the payments for the lease of the La Crosse Queen be exempt from the sales tax imposed.

### I.

¶ 22. The issue presented is whether § 77.54(13) exempts from sales tax the payments made by Riverboats America to La Crosse Queen, Inc., for the lease of the La Crosse Queen. Section 77.54 provides:

> **77.54 General exemptions.** There are exempted from the taxes imposed by this subchapter [relating to general sales and use tax]:
>
> . . . .
>
> (13) The gross receipts from the sales of and the storage, use or other consumption in this state of commercial vessels and barges of 50-ton burden or over *primarily engaged in interstate or foreign com-*

[1] All further statutory references are to the 1989–90 volumes unless otherwise indicated.

*merce* or commercial fishing, and the accessories, attachments, parts and fuel therefor.

(Emphasis added.) The parties' sole dispute is whether, during the tax periods in question, the La Crosse Queen was "primarily engaged in interstate. . .commerce."[2] The terms "interstate commerce" and "primarily" are not defined in the statutes.

¶ 23. The parties, the majority opinion, the circuit court, the court of appeals and the tax appeals commission construe the phrase "interstate commerce" to be consistent with the meaning of the phrase "commerce. . .among the several States" in the Commerce Clause of the federal Constitution. U.S. Const. art I, § 8, cl. 3. I see no reason to believe the legislature intended otherwise and I follow this approach.

¶ 24. The meaning of the term "primarily" as used in this statute was not reached below and is a question of first impression. The court of appeals remanded the cause to the circuit court for remand to the tax appeals commission for further proceedings to determine whether the La Crosse Queen was "primarily" engaged in interstate commerce.

¶ 25. I conclude that the entire statutory phrase "primarily engaged in interstate or foreign commerce" takes its meaning from the Commerce Clause. The legislature intended that § 77.54(13) exempt from taxation only those activities which the Commerce Clause prohibits the state from taxing.

¶ 26. I address three questions: whether the operation of the La Crosse Queen was an interstate activity; if so, whether that activity was commerce;

---

[2] The taxpayer does not contest the propriety of applying the sales tax to payments on the lease of the La Crosse Queen on grounds other than the § 77.54(13) exemption.

and, if so, whether the La Crosse Queen was primarily engaged in that interstate commerce.

¶ 27. Although a determination of whether an activity is interstate commerce is not ordinarily treated as separate inquiries about what is interstate activity and what is commerce, I will follow this approach because it seems to be the approach of the parties, the tax appeals commission, the circuit court and the majority opinion.

## II.

¶ 28. I first inquire whether the operations of the La Crosse Queen were interstate activities.

¶ 29. The La Crosse Queen was leased to provide recreational excursion voyages of varying length embarking from and returning to La Crosse, Wisconsin. It made no stops during its journeys. It did, however, travel for approximately half of each voyage in the state of Minnesota. The State does not dispute that the La Crosse Queen "crosse[d] over into Minnesota waters," brief for State at 6, and traveled on one leg of each journey on the Minnesota side of the Mississippi River. I think this fact is enough to demonstrate that the operations of the La Crosse Queen were interstate activities.

¶ 30. The majority relies on a single authority, also the sole authority offered by the State, for the proposition that boats which "might sail over soil belonging to [Minnesota] in passing between two [Wisconsin] points," are not involved in interstate commerce. *Cincinnati, Portsmouth, Big Sandy and Pomeroy Packet Co. v. Bay*, 200 U.S. 179, 183 (1906); Majority op. at 447; brief for State at 6–7. In *Cincinnati*, the Court was called upon to determine whether rate-setting and non-interference provisions in a con-

tract were antitrust violations under the Sherman Act. The parties to the contract operated freight and passenger boats which traveled between two Ohio ports through the waters of but without landing in Kentucky. The threshold question was whether the subject of the contract involved interstate commerce such that it was within reach of the Sherman Act.

¶ 31. In the paragraph succeeding the one from which the majority draws its quotation, the Court concluded that it would be unwise to assume that the commerce at issue was not interstate commerce: "We will suppose then that the contract does not leave commerce among the States untouched." *Cincinnati*, 200 U.S. at 184. *Cincinnati*, at a minimum, left open the question whether a boat which embarks from one state and travels through the waters of another to reach a point in the original state is engaged in interstate activity.

¶ 32. In *Cornell Steamboat Co. v. United States*, 321 U.S. 634 (1944), the Court answered the question arguably left unanswered in *Cincinnati*. Cornell operated tugboats which moved barges from one port in New York to a different port in New York by way of New Jersey as well as New York waters. Although not stopping in New Jersey or transferring goods or people for deposit in New Jersey, the Court held that this activity was interstate commerce subject to regulation under the Interstate Commerce Act. The Court found it sufficient that "[w]hile moving on New Jersey waters, Cornell's vessels are not at that time at 'a place' in New York. Certain of its towing activities therefore actually move vessels from places in New York to places in New Jersey and thence back to places in New York." *Cornell Steamboat*, 321 U.S. at 638–39.

¶ 33. Four years later the Court held that passenger buses traveling between points in the same state through other states are engaged in interstate commerce. *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653 (1948) (unapportioned state tax on bus company's gross receipts for such trips violates Commerce Clause). The Court stated: "It is too late in the day to deny that transportation which leaves a State and enters another State is 'Commerce. . .among the several States' simply because the points from and to are in the same State." *Id.* at 655–56 (citation omitted).

¶ 34. The State contends that the rule set forth in these cases does not apply to the La Crosse Queen's journeys. "[T]hese cases require movement between two separate points. In the instant case, there was no such movement." Brief for State at 10. The State properly characterizes the facts of the cases but I discern no intent of the Court to limit its holding to movement from one place to another in the state.

¶ 35. Other courts have applied the rule of these cases to excursions embarking from and returning to the same port after moving across another state. Under circumstances similar to the present case, the Supreme Court of Missouri has said:

> "Of course we are dealing here with 'interstate commerce'." [*Central Greyhound*, 334 U.S.] at 661.

> The transportation of passengers in this case by boat on a boundary river in a continuous non-stop journey from and to the same point in Missouri during which the boat crosses the boundary line into and traverses waters of Illinois is interstate commerce. [citing *Cornell Steamboat* and *Central Greyhound*] To say that this transportation is confined to Missouri is to ignore a fact; to say that this

commerce is not interstate would be to indulge in pure fiction.

*City of St. Louis v. Streckfus*, 505 S.W.2d 70, 73–74 (Mo. 1974).

¶ 36. While the majority opinion in the present case is arguably ambiguous, I read it as accepting what seems indisputable in light of *Cornell Steamboat* and *Central Greyhound*, that the operations of the La Crosse Queen may be considered interstate activities. Majority op. at 451.

¶ 37. Because the La Crosse Queen traveled through Minnesota waters for approximately half of each voyage, I conclude that the La Crosse Queen was engaged in an interstate activity.[3]

---

[3] The taxpayer points to *Town of La Pointe v. Madeline Island Ferry Line, Inc.*, 179 Wis. 2d 726, 508 N.W.2d 440 (Ct. App. 1993), and *Washington Island Ferry Line, Inc. v. Department of Revenue*, No. 93 CV 1442 (Circuit Court for Dane County, Dec. 4, 1993) to demonstrate that its activity was interstate. These cases rely on *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). I agree with the majority opinion that *Town of La Pointe* and *Washington Island Ferry Line* are inapposite. These cases and *Yellow Cab* stand for the proposition that transportation of persons or goods solely within one state may be interstate commerce when the intrastate activity is an integral step in interstate movement and its relationship to interstate transit is not only casual and incidental. *Yellow Cab*, 332 U.S. at 230–33. For the same reasons, however, I am perplexed by the majority opinion's proposition that *Yellow Cab* provides the best comparison with the facts of the present case. Majority op. at 450.

## III.

¶ 38. I now turn to whether the interstate activity of the La Crosse Queen was commerce. The majority opinion concludes that because the purpose of the interstate trips was "recreation and entertainment" and not "transportation from one point to another" or "transfer of goods, money, or people," Majority op. at 448–49, 451, the activities of the La Crosse Queen were not commerce.

¶ 39. The majority opinion states that "[i]n order for an activity to qualify as interstate commerce, there must not only be interstate movement but also interstate business." Majority op. at 451. I agree. In contrast, however, I conclude that operating an excursion boat for hire with the sole object of providing recreation or entertainment to its customers is a business and, as such, is commerce. If recreation and entertainment were not commerce, Congress might be powerless to regulate pleasure vessels which traverse interstate or international waterways.[4]

¶ 40. The term "commerce" for purposes of the Commerce Clause has been interpreted broadly to include recreational activities. As one court has put it: "Since pleasure and recreational activities are a vital part of the nation's commerce, the Commerce Clause, U.S. Const. Art. I, s 8, would reach pleasure vessels." *United States v. LaBrecque*, 419 F. Supp. 430, 436 n.7 (D.N.J. 1976).

---

[4] Congress would be powerless to regulate a multitude of other forms of interstate activity, such as sightseeing flights which cross the Grand Canyon, interstate balloon excursions, traveling circuses, and sport fishing boats in interstate and international waters.

¶ 41. The United States Supreme Court has found transportation of persons for recreational purposes to be commerce under the Commerce Clause. In *Bob-Lo Excursion Co. v. Michigan,* 333 U.S. 28 (1948), the boat operator transported "patrons of the island's attractions from Detroit to Bois Blanc [in Canada] and return. The vessels engage in no other business on these trips. No freight, mail or express is carried; the only passengers are the patrons bent on pleasure. . . .No intermediate stops are made on these excursions." *Id.* at 29–30. The Court concluded: "There can be no doubt that appellant's transportation of its patrons is foreign commerce within the scope of Art. I, § 8." *Id.* at 34.

¶ 42. I therefore conclude that the activities of the La Crosse Queen were commerce.

## IV.

¶ 43. I next consider the meaning of the word "primarily" in the context of the statutory language exempting a vessel "primarily engaged in interstate or foreign commerce." The word "primarily" is not defined in the statutes.

¶ 44. The language of § 77.54(13) has remained unchanged since it was first enacted in 1969 as part of the General Sales and Use Tax. Section 260, Ch. 154, Laws of 1969. The drafting record is silent as to the intent of the drafters of § 77.54(13).

¶ 45. Two doctrines guide the court's interpretation of tax statutes in this context. First, it is well established that tax exemption statutes are matters of legislative grace and are to be construed narrowly against the granting of an exemption. *Ramrod, Inc. v. Department of Revenue,* 64 Wis. 2d 499, 504, 219 N.W.2d 604 (1974); *Comet Co. v. Department of Taxa-*

*tion*, 243 Wis. 117, 123, 9 N.W.2d 620 (1943). The legislature, therefore, drafts exemption statutes with the expectation that courts will resolve doubts against the granting of an exemption.

¶ 46. Second, in the absence of persuasive contrary indication, tax statutes may be presumed to reach as broadly as constitutionally permissible. To this end, the court has construed other tax provisions which relate to interstate commerce by reference to Commerce Clause standards. *Consolidated Freightways Corp. of Delaware v. Department of Revenue*, 164 Wis. 2d 764, 772–76, 477 N.W.2d 44 (1991) (discussing cases). In *Consolidated Freightways*, the court determined whether the operations of an interstate motor carrier were subject to tax under Wis. Stat. § 71.07(2)(e) (1985–86) by construing the statute as coextensive with Commerce Clause limits. The court explained that it "has traditionally looked to the Commerce Clause to ascertain the limits upon Wisconsin's tax jurisdiction over interstate businesses." *Id.* at 773.[5]

¶ 47. Applying these doctrines to the language of § 77.54(13) I conclude that the legislature, by exempting vessels primarily engaged in interstate commerce, intended to tax to the full extent permitted by the Commerce Clause.

¶ 48. Having determined that the La Crosse Queen was engaged in interstate commerce and that § 77.54(13) exempts only those activities constitutionally immunized from taxation, the next step is to ascertain whether the Commerce Clause requires that

---

[5] *See also K-S Pharmacies, Inc. v. American Home Products Corp.*, 962 F.2d 728, 730 (7th Cir. 1992) ("When dealing with laws having extraterritorial potential, such as tax legislation, [the Supreme Court of Wisconsin] has endeavored to conform the legislation to limits on state power.").

any portion of the payments for the lease of the La Crosse Queen be exempt from the sales tax imposed.

¶ 49. The modern test for the propriety of a tax on interstate commerce was first set forth in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977). In that case the Court, focusing on the effect rather than the language of the tax, applied a four-part test. A state tax will survive a Commerce Clause challenge only if it "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id.* at 279.

¶ 50. The Court has recently applied the *Complete Auto* test to uphold a state's sales tax on the full price of a bus ticket for travel from the taxing state to another state. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 115 S. Ct. 1331 (1995) (distinguishing *Central Greyhound*, 334 U.S. 653).

¶ 51. The parties have not briefed this issue and the tax appeals commission, circuit court and court of appeals have not ruled on it. Although at first blush it may appear that under *Oklahoma Tax* no apportionment is required, I conclude that this issue should not be decided without giving the parties an opportunity for briefing.

¶ 52. Therefore, I would affirm the decision of the court of appeals to hold that the cause should be remanded to the circuit court for remand to the tax appeals commission. I would have the tax appeals commission determine whether the Commerce Clause requires that any portion of the payments for the lease of the La Crosse Queen be exempt from the sales tax imposed.

¶ 53. For the reasons set forth, I dissent.

461

¶ 54. I am authorized to state that Justice Ann Walsh Bradley joins this opinion.